# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Application of CONSUMERS ENERGY
COMPANY to Increase Rates.

---

RESIDENTIAL CUSTOMER GROUP,

        Appellant,

v

CONSUMERS ENERGY COMPANY,

        Petitioner-Appellee,

and

MICHIGAN PUBLIC SERVICE COMMISSION,
HEMLOCK SEMICONDUCTOR, LLC, and
MICHIGAN CABLE TELECOMMUNICATIONS
ASSOCIATION,

        Appellees.

UNPUBLISHED
October 25, 2018

No. 338592
MPSC
LC No. 00-017990

---

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Residential Customer Group (hereinafter "Residential") appeals as of right portions of the February 28, 2017 order of the Michigan Public Service Commission (MPSC), in Case No. U-17990, affirming the application for a rate increase and granting other relief requested by Consumers Energy Company (hereinafter "Consumers"). We affirm.

## I. STANDARD OF REVIEW

In accordance with *In re Consumers Energy Co Application*, 322 Mich App 480, 486-487; 913 NW2d 406 (2017) (citations to caselaw omitted):

> The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates,

-1-

regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. An order is unreasonable if it is not supported by the evidence.

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

We give due deference to the PSC's administrative expertise and will not substitute our judgment for that of the PSC. We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and this Court will not overrule that construction absent cogent reasons. If the language of a statute is vague or obscure, the PSC's construction serves as an aid in determining the legislative intent and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. However, the construction given to a statute by the PSC is not binding on us. Whether the PSC exceeded the scope of its authority is a question of law that is reviewed de novo.

"Constitutional claims are . . . reviewed de novo." *Ligon v City of Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).

## II. SMART METERS AND MPSC JURISDICTION

Residential raises issues that have previously been addressed by the MPSC and this Court regarding the use of smart meters by Consumers. In this appeal, Residential challenges the MPSC's findings pertaining to the use of smart meters in regards to: (a) the adequacy of notice afforded to customers regarding the ability to opt-out of smart meter installation, (b) the election by and authority of Consumers to use an opt-out rather than an opt-in procedure, (c) Consumers' reliance on prior MPSC decisions in noncontested cases, which it asserts are not binding, i.e., U-17000 and U-17102, (d) whether sufficient evidence was adduced to demonstrate that the approved tariffs were cost-based and, as a related matter, the failure to consider the availability of self-reading and reporting of electric use by customers, in addition to (e) various constitutional issues pertaining to the right to privacy, due process and the Fourth Amendment, as well as the failure to adequately consider health and safety concerns of customers.

This Court has recently addressed many of the issues raised by Residential in the current appeal, in *In re Consumers Energy Co App*, 322 Mich App 480. In that earlier case, Residential argued, as here,

that the [M]PSC lacked the authority, absent specific statutory guidance, to mandate the installation of smart meters in customers' homes by approving Consumers' smart-meter program and its attendant tariffs on an "opt-out" basis. [Residential] specifically argue[d] that in prior uncontested cases, the [M]PSC

-2-

foreclosed the presentation of evidence concerning health questions and privacy matters related to smart meters and that this defective process prevented the introduction of evidence regarding an alternative "opt-in" approach that would have respected customer choices and concerns. [*Id*. at 489.]

This Court rejected Residential's arguments, finding "that the [M]PSC did not lack the authority to approve implementation of the smart-meter program and the attendant fees on customers." *Id*. at 490. Specifically, this Court recognized that "[t]he [M]PSC has broad authority to regulate rates for public utilities, but that authority does not include the power to make management decisions for utilities." *Id*. While this Court concurred that "the [M]PSC] has no statutory authority to enable Consumers to require all of its customers to participate in the AMI (advanced metering infrastructure) program and accept a smart meter or to pay fees if they choose to opt out of the AMI program," it emphasized that the absence of such statutory authority is "because the decision regarding the type of equipment to deploy as an upgrade to infrastructure can only be described as a management prerogative. Consumers applied for approval of its AMI program, but that fact does not mandate a conclusion that Consumers' decision regarding the type of meters to use is not a management decision." *Id*. In addition, this Court determined:

> Consumers proposed opt-out fees, calculated on the basis of cost-of-service principles that would be imposed only on those customers who chose not to participate in the AMI program. The fees were designed to cover the additional costs of providing service to those customers. Accordingly, approval of the opt-out fees was a proper exercise of the [M]PSC's ratemaking authority. [*Id*. at 491 (citations omitted).]

This Court has also previously addressed Residential's concerns that the installation of smart meters by Consumers raised issues of privacy for Consumers' customers and related issues pertaining to "data collection, and the transmittal of data violates due-process and Fourth Amendment principles." *Id*. Having considered Residential's claims, this Court held "that the installation of a smart meter on a customer's home does not violate the customer's rights under the Fourth Amendment of the United States Constitution because Consumers is not a state actor." *Id*. Specifically, this Court explained:

> The Fourth Amendment applies only to governmental actions, and it is not applicable to a search performed by a private actor who is not acting as an agent of the government. Appellants have not established that the installation of either a transmitting or a nontransmitting AMI meter constitutes a search or, even if it did, that Consumers was acting as an agent of the government. [*Id*. at 492 (citation omitted).]

In addition, in an earlier ruling in *Detroit Edison Co v Stenman*, 311 Mich App 367; 875 NW2d 767 (2015), although involving a different utility company (DTE), this Court rejected the same argument, stating:

> First, defendants have not shown, or even argued, that an illegal search has already been performed through the smart meter that was installed on their property. Instead, their arguments in the lower court and on appeal focus on the

potential for smart meters to collect information from the homes of Americans in the future. Further, defendants have failed to establish that plaintiff's installation of smart meters constitutes governmental action for Fourth Amendment purposes. Even if the state and federal governments have advocated or incentivized, as a matter of public policy, the use of smart meters, there is no indication that the government controls the operations of plaintiff, an investor-owned electric utility, or that plaintiff acts as an agent of the state or federal governments. Accordingly, we reject defendants' claim that plaintiff's installation of a smart meter violated their Fourth Amendment rights. [*Id*. at 387-388.]

This Court has determined that the ruling in "*Stenman* controls on this issue." *In re Consumers Energy Co App*, 322 Mich App at 493.

This Court has also addressed Residential's issues pertaining to whether sufficient evidence has been adduced regarding the cost-based nature of the tariffs imposed and the potential for opt-out customers to self-read their meters. Before discussing the substance of the issue, this Court recognized:

> Ratemaking is a legislative, rather than a judicial, function. For that reason, the doctrines of res judicata and collateral estoppel do not apply in a strict sense. Nevertheless, factual "issues fully decided in earlier PSC proceedings need not be 'completely relitigated' in later proceedings unless the party wishing to do so establishes by new evidence or a showing of changed circumstances that the earlier result is unreasonable." [*In re Consumers Energy Co App*, 322 Mich App at 493-494 (citations omitted).]

In the earlier rejection of Residential's claims, this Court reviewed the history of this issue in the MPSC as follows:

> This issue was recently decided by the PSC in another case on remand from this Court. In *In re Application of Consumers Energy Co*, order of the Public Service Commission, entered July 12, 2017 (Case No. U-17087), another matter involving Consumers Energy Company, the PSC entered an order on June 28, 2013, approving opt-out fees for customers who requested a non-transmitting meter. The Attorney General and individual appellant [Michelle] Rison, among others, appealed the [M]PSC's order and challenged the imposition and the amount of the opt-out fees. In *Attorney General v Pub Serv Comm*, unpublished per curiam opinion of the Court of Appeals, issued April 30, 2015 (Docket Nos. 317434 and 317456), [rev'd in part on other grounds 498 Mich 967 (2016)], this Court, in Docket No. 317456, remanded the matter to the PSC to conduct a contested-case hearing to examine the opt-out tariff.
>
> In an order entered March 29, 2016, in Case No. U-17087, the PSC indicated that on remand it would address the purpose of the opt-out fees, whether the fees constituted reimbursement for the cost of services related to nontransmitting meters, and whether any of the costs were already accounted for in Consumers' base rates.

On January 19, 2017, the [administrative law judge] issued a [proposal for decision], finding that the opt-out fees represented reimbursement for the costs of service and that no expenses related to Consumers' opt-out program were accounted for in Consumers' base rates. The [administrative law judge] recommended that the [M]PSC reaffirm its June 28, 2013 decision.

On July 12, 2017, the [M]PSC issued an order on remand in Case No. U-17087, adopting the findings and recommendations in the [proposal for decision]. The [M]PSC found that the opt-out tariffs were cost-based and that Consumers provided an explanation of the cost-of-service principles used to determine those tariffs. Specifically, the [M]PSC stated that

> [o]pt-out fees represent incremental costs that are incurred solely in order to be able to offer the opt-out program; opt-out customers are protected by the credits from the costs of AMI, and customers who use standard equipment are protected from subsidizing customers who choose non-standard equipment. The amounts collected from opt-out customers are credited to base rate calculations to ensure that there is no double recovery. The Court of Appeals has found that smart meters are standard utility equipment, and that the choice of metering technology is a utility management prerogative. The opt-out tariff collects costs associated with the development and operation of a non-standard metering option. The Commission has previously rejected [Residential's] argument regarding the use of self-reads as an alternative to the opt-out program. The Commission has made it a priority to limit estimated and customer self-reading of meters in order to increase the accuracy of meter reading and billing. Commission rules require utilities to read a certain percentage of electric meters. [*In re Application of Consumers Energy Co. to Increase Rates*, order of the Public Service Commission, entered July 12, 2017 (Case No. U-17087), p 12 (citations omitted).]

The PSC ultimately affirmed the opt-out tariffs and credits related to the tariffs originally approved in the June 28, 2013 order in Case No. U–17087. *Id.* at 16.

In the instant case, [Residential is] requesting that this Court examine the opt-out fees in a manner similar to that undertaken by the PSC in Case No. U-17087. We decline to do so and defer to the decision on remand issued by the [M]PSC in Case No. U-17087. That decision is based on previous decisions of the [M]PSC and this Court. Appellants seek to reargue the matter yet again but have put forth nothing that would require this Court to conclude that the previous decision as reflected most recently in the order in Case No. U-17087 is unreasonable and should not be followed. See *In re Application of Consumers Energy Co*, 291 Mich App [106,] 122[; 804 NW2d 574 (2010)]. [*In re Consumers Energy Co App*, 322 Mich App at 494-496.]

Residential also complains that the methodology employed by Consumers for customers to opt-out of the smart meter program provides inadequate notice and, thus, violates due process. "Generally, due process in civil cases requires notice of the nature of the proceedings and an opportunity to be heard in a meaningful time and manner by an impartial decisionmaker." *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 29; 703 NW2d 822 (2005) (quotation marks and citations omitted). "The right to due process of law is a flexible concept and must be analyzed by considering the particular circumstances presented in a given situation." *In re Project Cost & Special Assessment Roll For Chappel Dam*, 282 Mich App 142, 150; 762 NW2d 192 (2009). As recognized previously, in conjunction with Residential's rejected Fourth Amendment claim, because the action complained of by Consumers does not comprise a governmental action, *In re Consumers Energy*, 322 Mich App at 492, Consumers cannot "be held liable for violations of the . . . Due Process Clause." *Fed Home Loan Mtg Ass'n v Kelley*, 306 Mich App 487, 497; 858 NW2d 69 (2014). Further, as evaluated by the administrative law judge, and affirmed by the MPSC, the notice provided by Consumers to its customers regarding smart meter installation is more than adequate with 30 days written notification before installation, a written reminder two weeks before installation with telephonic follow up, in addition to the availability of additional information both online and by telephone that is accessible by customers.

"To satisfy the demands of due process, if notice is due, the means employed must be such as one desirous of actually informing the [party in interest] might reasonably adopt to accomplish it[.]" *In re ITC Application*, 304 Mich App 561, 568; 847 NW2d 684 (2014) (citations and quotation marks omitted). In this situation, given the information to be provided and the methods of conveyance used by Consumers to apprise individual customers of the impending installation of a smart meter, how to obtain additional material or object to the installation, and the time frame afforded for a consumer to respond, the administrative law judge and MPSC correctly determined that sufficient notice was provided by Consumers to satisfy any due process requirement.

Once again, Residential raises health concerns pertaining to the use of smart meters. The MPSC, in Case No. U-17000, acknowledged this issue, finding that reports compiled examining available literature and scientific information on this topic determined that such concerns were insignificant. The same concerns were voiced in MPSC Case No. U-17053 involving DTE.[1] As recognized previously by this Court:

---

[1] While acknowledging the absence of precedential value, *Zaremba Equip, Inc v Harco Nat'l Ins, Co*, 280 Mich App 16, 42 n 10; 761 NW2d 151 (2008), citing MCR 7.215(C)(1), we note and find persuasive the decision in an unpublished per curiam opinion following the MPSC ruling in U-17053, wherein this Court found the MPSC's ruling to not be "unlawful or unreasonable" based on the failure of the individuals raising safety claims to come forward with "new evidence or any changed circumstances [to] render [the MPSC's] decision unreasonable." *In re Application of Detroit Edison Co to Implement Opt Out Program*, unpublished per curiam opinion of the Court of Appeals, issued February 19, 2015 (Docket Nos. 316728, 316781), p 8.

Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. In contrast to res judicata, collateral estoppel conclusively bars only issues actually litigated in the first action.

However, ratemaking is a legislative, rather than a judicial, function, and thus the doctrines of res judicata or collateral estoppel cannot apply in the pure sense. Even so, issues fully decided in earlier [M]PSC proceedings need not be completely relitigated in later proceedings unless the party wishing to do so establishes by new evidence or a showing of changed circumstances that the earlier result is unreasonable. [*In re Consumers Energy Application for Rate Increase*, 291 Mich App 106, 122; 804 NW2d 574 (2010) (citations, quotation marks and brackets omitted).]

While Residential once again raises the specter of safety concerns associated with smart meters, it has not cited evidence which is sufficient to necessitate the reconsideration of this issue at this time.

As recognized in *Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc*, 305 Mich App 460, 474; 853 NW2d 467 (2014): "It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding[.]" Yet, despite this proscription, Residential and others continue to raise issues already definitively determined by both the MPSC and this Court with reference to the use and installation of smart meters and their technology and the authority or jurisdiction of the MPSC for its various rulings. Indisputably, if Residential were to come forward with "new evidence or a showing of changed circumstances that the earlier result is unreasonable," *In re Consumers Energy App*, 291 Mich App at 122, it would have every right to challenge Consumers or the MPSC. But mere dissatisfaction with the outcome of innumerable past proceedings is not sufficient to justify the different outcome sought by Residential, particularly in light of the apparent indication that smart meter technology is not part of the accepted industry standard adopted by Consumers and other utilities consistent with their authority and management prerogative. *In re Consumers Energy App*, 322 Mich App at 490 ("[T]he decision regarding the type of equipment to deploy as an upgrade to infrastructure can only be described as a management prerogative.").

## III. ACCOUNTING PRACTICES AND RETROACTIVE RATEMAKING

Residential also challenges the MPSC's affirmance of the administrative law judge's ruling approving Consumers' request to defer city income taxes, having determined that the deferral does not comprise prohibited retroactive ratemaking.

Due to increases in Consumers' deferred city tax liabilities in recent years, the utility sought to prospectively record the referenced taxes using the GAAP (generally accepted accounting principles) deferral accounting method, "to record a one-time adjustment to deferred income tax liabilities of approximately $14 million, and to recognize an associated regulatory asset of approximately $14 million." Commensurately, Consumers requested the MPSC to

"authorize the straight-line recovery of the regulatory tax asset over a 20-year period, the approximate period over which the associated book/tax differences will reverse." Both the administrative law judge and the MPSC recognized the propriety and authority to permit the requested deferred accounting because it did not affect or "readjust rates charged in prior years" and, therefore, did not constitute retroactive ratemaking. Despite the MPSC's having addressed this issue in prior rulings and regardless of published and unpublished decisions by this Court, Residential continues to assert the impropriety of Consumer's request and argues that the requested deferral constitutes impermissible retroactive ratemaking.

"MCL 460.556 provides the [M]PSC with the power to prescribe uniform methods of keeping accounts for electric utilities." *Attorney General v Pub Serv Comm*, 262 Mich App 649, 651; 686 NW2d 804 (2004). "Retroactive ratemaking, which is prohibited, involves a change either upward or downward in the rates charged by a utility for its services under a lawful order." *Id*. at 657. Because "rates are set in the commission's legislative capacity," they "must be construed like statutes and only be given prospective effect." *Id*. at 655. So, under the principle of the rule against retroactive ratemaking, when estimates of future costs on which rates are based prove inaccurate by being either higher or lower than predicted, "the previously set rates cannot be changed to correct for the error; the only step that the MPSC can take is to prospectively revise rates in an effort to set more appropriate ones." *Detroit Edison Co v Pub Serv Comm*, 416 Mich 510, 523; 331 NW2d 159 (1982).

The MPSC has previously approved the methodology proposed by Consumers to be used in this case in MPSC Case No. U-16864 to account for deferred federal and state income taxes, wherein it ordered:

> "Regulated utilities shall apply the Commission's policy for deferral accounting and full normalization ratemaking to the recent state and federal law changes, as delineated in the February 8, 1993 order in Case No. U-10083, over a period reasonably related to the reversal of the underlying book-tax basis differences. [*In the matter on the Commission's Own Motion to Seek Comments for Deferred Accounting Treatment for the Remeasurement of Deferred Tax Balances*, order of the Michigan Public Service Commission, entered February 15, 2012 (Case No. U-16864), p 3.]

Further, in U-10083, the MPSC found the accounting method Consumers proposed in the current case not only acceptable but preferable, stating:

> Deferred tax accounting better matches book revenues and expenses to their related tax effects. It thus better reflects the financial results of the companies' operations and assigns to the same ratepayers the costs and benefits of the items for which deferred tax accounting is used, which promotes intergenerational equity. Deferred tax accounting is not harmful to ratepayers. . . . [T]he Commission has granted most requests for deferred tax accounting and has granted many requests for continuing authority. . . .

\* \* \*

-8-

With respect to generally accepted accounting principles, . . . deferred tax accounting is the preferred accounting for taxes, even if the relevant accounting standards have permitted an exception for regulatory agencies to require flow-through accounting. Deferred tax accounting also promotes rate stability because it eliminates distortions due to fluctuations in book/tax-timing differences. [*In the matter on the Commission's Own Motion to Examine the Provisions of the Uniform Systems of Accounts for Electric and Gas Utilities Related to Deferred Income Tax Accounting*, Michigan Public Service Commission Order, entered February 8, 1993 (Case No. U-10083), p 5.]

It has also historically been recognized that the amortization of expenditures "becomes a current expense even though it reflects expenditures that were . . . in the past," and as such "amortization does not constitute retroactive ratemaking." *Assoc of Businesses Advocating Tariff Equity v Public Serv Comm*, 208 Mich App 248, 261; 527 NW2d 533 (1994) (citation omitted).[2]

In this instance, Consumers' request sought "to prospectively use deferred income tax accounting for city income taxes, and not a modification of rates set in a previous case." Consistent with prior rulings of this Court, because "there was no adjustment to previously set rates, but only future rates were affected," the MPSC's order does not violate the rule against retroactive ratemaking. *Pub Serv Comm*, 262 Mich App at 658. "Once these expenses were deferred, they became expenses incurred in the year to which they were deferred," and, thus, are prospective in nature and not retroactive. *Id*.

We affirm.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica

---

[2]    We also find noteworthy that DTE has made a similar request, which the MPSC approved and this Court affirmed, regarding the same local tax increases:

The city of Detroit increased its corporate tax rate from 1% to 2%, effective January 1, 2012. DTE's tax witness testified that the PSC had allowed amortization of deferred tax balances in previous cases, and that DTE was requesting similar treatment in this case. The PSC found that the requested treatment did not constitute retroactive ratemaking, and noted that DTE's request was consistent with accounting treatment authorized in prior PSC cases. [*In re DTE Electric Co*, unpublished per curiam opinion of the Court of Appeals, issued February 13, 2018 (Docket Nos. 331599, 331868, 332159), p 8.]

"Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).