Per Curiam.
*482 *409 In these consolidated appeals, appellants the Association of Businesses Advocating Tariff Equity (ABATE) (Docket No. 330675), Residential Customer Group (RCG) and Michelle Rison (Docket No. 330745), and the Attorney General (Docket No. 330797) appeals a November 19, 2015 order of the Michigan Public Service Commission (PSC) approving a return on equity of 10.3% for appellee Consumers Energy Company and authorizing Consumers to continue its smart-meter program. For the reasons stated in this opinion, we affirm.
*483 I. FACTS
On December 5, 2014, Consumers filed an application to increase its rates for the sale of electricity. Consumers used a projected test year ending May 31, 2016, and stated that without rate relief it would experience an annual revenue deficiency of approximately $166 million. Consumers stated that its need for additional revenue was based on the following factors: (1) the purchase of a 450-megawatt natural gas plant to partially offset the projected capacity shortfall resulting from the retirement of seven coal plants in April 2016, (2) continuing investments in electric generation and distribution assets to comply with legal and environmental requirements, (3) continuing investments in electric generation and distribution assets to provide safe and reliable service, (4) ongoing investments in technology improvements, and (5) increased operating and maintenance expenses to improve reliability of service. Consumers sought approximately $166 million in rate increases and the authorization to produce a return on common equity (ROE) of 10.7%.
On June 4, 2015, Consumers self-implemented[1] a rate increase of $110 million above its current rates. Consumers also eliminated a customer credit. The rate increase and the elimination of the credit raised Consumers' retail rates by $166 million.
The administrative law judge (ALJ) issued a proposal for decision (PFD) recommending that Consumers'
*484 overall rate of return be set at 6.09%, including an ROE of 10.00%. The ALJ noted that Consumers had requested a rate increase for various purposes, including continuing technology investments in its Advanced Metering Infrastructure *410 (AMI) system,[2] and concluded that recovery of the costs of the projected test year AMI investment should be allowed.
On November 19, 2015, the PSC, in a 2-1 decision, issued an order authorizing Consumers to raise its rates. The PSC rejected requests by the Attorney General and RCG to terminate the AMI program, reasoning as follows:
The Commission adopts the findings and recommendations of the ALJ. As the ALJ relates, the Commission has thoroughly vetted the underlying cost/benefit analyses and the AMI program itself and will not revisit those issues. See , November 2, 2009 and October 7, 2014 orders in Case No. U-15645; November 4, 2010 order in Case No. U-16191; June 7, 2012 order in Case No. U-16794; and June 28, 2013 order in Case No. U-17087. The AMI program is correctly characterized as a grid modernization program that cannot be replaced by renewable energy or energy efficiency measures. The Commission finds that no party provided evidence showing that conditions have changed such that the current rate base and depreciation *485 treatment of these expenses should be changed. Consumers shall continue to provide cost/benefit analyses as long as the program is still in the implementation phase. The Commission approves Consumers' proposed test year expenditure, minus the contingency expenditure identified by the Staff.
The PSC reviewed the evidence and the parties' recommendations regarding Consumers' request for an ROE of 10.7%, noting that Consumers took the position that if the PSC did not approve an ROE of 10.7%, it should not set the rate lower than the current 10.3%. The PSC concluded:
The Commission agrees with the utility and finds that the current 10.3% ROE should be continued. While the ALJ provided an excellent analysis of this issue, the Commission finds that the current ROE will best achieve the goals of providing appropriate compensation for risk, ensuring the financial soundness of the business, and maintaining a strong ability to attract capital.
Consumers has planned an ambitious capital investment program, much of which is related to environmental and generation expenditures that are unavoidable and are saddled with time requirements. The Commission observes that 10.3% is at the upper point of the Staff's recommended ROE range, and Consumers showed, using the Staff's exhibit, that the average ROE resulting from recently decided cases in Michigan, Indiana, Ohio, Pennsylvania, and Wisconsin was 10.26%. The Commission acknowledges that ROEs, nationally, have shown a steady decline (as they have in Michigan), and agrees with the Attorney General that Michigan's economy has stabilized; but finds that, under present circumstances, it is reasonable to assume *411 that investor expectations may be rising. Consumers' recently-improved credit ratings will help the utility secure the financing required to carry out its goals. Thus, the Commission favors adopting an ROE of 10.30%.
*486 The dissenting Commissioner concluded that approving an ROE of 10% was more reasonable given the record.
ABATE, RCG and Rison, and the Attorney General appealed the PSC's order. This Court consolidated the appeals for purposes of hearing and decision.
II. STANDARD OF REVIEW
In In re Application of Consumers Energy Co. to Increase Electric Rates (On Remand) , 316 Mich.App. 231, 236; 891 N.W.2d 871 (2016), we explained that
The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. Mich. Consol. Gas Co. v. Pub. Serv. Comm. , 389 Mich. 624, 635-636, 209 N.W.2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. In re MCI Telecom. Complaint , 460 Mich. 396, 427, 596 N.W.2d 164 (1999). An order is unreasonable if it is not supported by the evidence. Associated Truck Lines, Inc. v. Pub. Serv. Comm. , 377 Mich. 259, 279, 140 N.W.2d 515 (1966) [O'HARA, J., dissenting].
A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const. 1963, art. 6, § 28 ; Attorney General v. Pub. Serv. Comm. , 165 Mich.App. 230, 235, 418 N.W.2d 660 (1987).
We give due deference to the PSC's administrative expertise and will not substitute our judgment for that of the PSC. Attorney General v. Pub. Serv. Comm. No. 2 , 237 Mich.App. 82, 88, 602 N.W.2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the *487 PSC is empowered to execute, and this Court will not overrule that construction absent cogent reasons. In re Complaint of Rovas against SBC Mich. , 482 Mich. 90, 103, 108; 754 N.W.2d 259 (2008). If the language of a statute is vague or obscure, the PSC's construction serves as an aid in determining the legislative intent and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. Id . at 103-104. However, the construction given to a statute by the PSC is not binding on us. Id . at 103. Whether the PSC exceeded the scope of its authority is a question of law that is reviewed de novo. In re Complaint of Pelland Against Ameritech Mich. , 254 Mich.App. 675, 682, 658 N.W.2d 849 (2003).
III. ANALYSIS
Appellants ABATE and the Attorney General argue that the PSC erred by approving an ROE of 10.3% for Consumers. They assert that the 10.3% ROE approved by the PSC does not have support in the record, that non of the parties advocated for that particular ROE, that the PSC's choice appears to have been a compromise among the ROEs recommended by the parties, and that the PSC provided no rationale for choosing the ROE that it did.
We hold that the PSC's order approving an ROE of 10.3% was lawful and *412 reasonable and that the PSC's decision was not arbitrary or capricious.
The establishment of a reasonable utility rate is not subject to precise computation. What is reasonable "depends upon a comprehensive examination of all factors involved, having in mind the objective sought to be attained in its use." Meridian Twp. v. East Lansing , 342 Mich. 734, 749, 71 N.W.2d 234 (1955). See also id . at 753, 71 N.W.2d 234 (holding that the township failed to meet its burden of showing that the rate charged for water was unreasonable). As long as the PSC chooses a rate that *488 is neither "so low as to be confiscatory nor so high as to be oppressive," the PSC has discretion to set the rate at the level it chooses. Mich. Bell Tel. Co. v. Pub. Serv. Comm. , 332 Mich. 7, 26, 50 N.W.2d 826 (1952) (citation omitted). See also id . at 42-43 (holding that the PSC's establishment of reduced telephone rates neither confiscatory nor oppressive).
Testimony from witnesses for Consumers and the PSC staff supports the approval of an ROE of 10.3%. Consumers' witness Venkat Dhenuvakonda Rao recommended an ROE range of 10.50% to 10.90% after adjusting for economic conditions; however, his quantitative models produced a range from 8.94% to 10.69 %. PSC staff witness Kirk D. Megginson testified that an ROE in the range of 8.3% to 10.3% would be reasonable. Megginson recommended the adoption of an ROE of 10.0%, but he did not suggest that the adoption of a different rate would be unreasonable. The PSC was entitled to rely on the evidence from these experts, even if other witnesses presented contradictory testimony. In re Application of Consumers Energy to Increase Electric Rates (On Remand) , 316 Mich.App. at 240, 891 N.W.2d 871, citing Great Lakes Steel Div. of Nat'l. Steel Corp. v. Mich. Pub. Serv. Comm. , 130 Mich.App. 470, 481, 344 N.W.2d 321 (1983). Furthermore, the fact that one Commissioner dissented and would have established Consumers' ROE at 10% does not mandate a conclusion that the PSC's decision was unreasonable. See ABATE v. Pub. Serv. Comm. , 208 Mich.App. 248, 265, 527 N.W.2d 533 (1994) (explaining that one commissioner's disagreement with the PSC's findings does not require this Court to conclude that the PSC's decision was not supported by the requisite evidence).
The PSC noted that the rate of 10.3% was within the PSC staff's recommended range and that it was consistent *489 with ROEs approved in other Midwestern states. The PSC acknowledged that ROEs were trending downward nationally, but it noted that Consumers' credit rating had improved and reasoned that lowering the company's ROE would impede the company's ability to secure financing for future investments. The PSC is required to "consider and give due weight to all lawful elements necessary" to determine an appropriate rate. MCL 460.557(2). In determining rates, the "PSC is not bound by any single formula or method and may make pragmatic adjustments when warranted by the circumstances." Detroit Ed. Co. v.Pub. Serv. Comm. , 221 Mich.App. 370, 375, 562 N.W.2d 224 (1997).
The PSC examined the evidence and determined that an ROE of 10.3% was appropriate. The PSC acted consistently with its statutory authority, MCL 460.557(2), and acted within its discretion to determine an appropriate ROE, Detroit Ed. Co. , 221 Mich.App. at 375, 562 N.W.2d 224. Neither ABATE nor the Attorney General has shown that the PSC's order was unlawful or unreasonable. MCL 462.28(8).
Next, appellants RCG and Rison argue that the PSC lacked the authority, absent specific statutory guidance, to mandate the *413 installation of smart meters in customers' homes by approving Consumers' smart-meter program and its attendant tariffs on an "opt-out" basis. RCG and Rison specifically argue that in prior uncontested cases, the PSC foreclosed the presentation of evidence concerning health questions and privacy matters related to smart meters and that this defective process prevented the introduction of evidence regarding an alternative "opt-in" approach that would have respected customer choices and concerns. *490 We hold that the PSC did not lack the authority to approve implementation of the smart-meter program and the attendant fees on customers.
The PSC has only the authority granted to it by statute. The PSC has broad authority to regulate rates for public utilities, but that authority does not include the power to make management decisions for utilities. Consumers Power Co. v. Pub. Serv. Comm. , 460 Mich. 148, 158, 596 N.W.2d 126 (1999) (holding that the PSC lacked the authority to order local utilities to transmit "electricity from a third-party provider's system to an end-user who is not connected to that system"); Union Carbide Corp. v. Pub. Serv. Comm. , 431 Mich. 135, 148-150, 428 N.W.2d 322 (1988) (holding that the PSC lacked the authority to make management decisions for the utility regarding the operation of its facilities).
RCG and Rison correctly point out that the PSC has no statutory authority to enable Consumers to require all its customers to participate in the AMI program and accept a smart meter or to pay fees if they choose to opt out of the AMI program. However, no such statute exists because the decision regarding the type of equipment to deploy as an upgrade to infrastructure can only be described as a management prerogative. Consumers applied for approval of its AMI program; but that fact does not mandate a conclusion that Consumers' decision regarding the type of meters to use is not a management decision. RCG and Rison's suggestion that the PSC could order Consumers to develop an opt-in program is clearly the type of action found invalid in Union Carbide , 431 Mich. at 148-150, 428 N.W.2d 322.
RCG and Rison's reliance on Attorney General v. Pub. Serv. Comm. , 269 Mich.App. 473, 713 N.W.2d 290 (2006), is misplaced. In that case, this Court held that the PSC lacked the statutory authority to authorize Consumers *491 to impose an extra charge on all customers-including those who had not agreed to pay premium rates to receive green power-to finance renewable-energy programs. Id. at 481-482, 713 N.W.2d 290. In the instant case, Consumers proposed opt-out fees, calculated on the basis of cost-of-service principles, that would be imposed only on those customers who chose not to participate in the AMI program. The fees were designed to cover the additional costs of providing service to those customers. Accordingly, approval of the opt-out fees was a proper exercise of the PSC's ratemaking authority. MCL 460.6a(1) ; Detroit Edison , 221 Mich.App. at 385, 562 N.W.2d 224.
Next, RCG and Rison argue that the PSC's disregard of Consumers' customers' concerns about privacy, data collection, and the transmittal of data violates due-process and Fourth Amendment principles.
We hold that the installation of a smart meter on a customer's home does not violate the customer's rights under the Fourth Amendment of the United States Constitution because Consumers is not a state actor.
*414 We review de novo a question of constitutional law, including whether an individual's Fourth Amendment right to be free from unreasonable searches has been violated. Detroit Edison Co. v. Stenman , 311 Mich.App. 367, 387, 875 N.W.2d 767 (2015).
The Fourth Amendment of the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
*492 The Fourth Amendment applies only to governmental actions, and it is not applicable to a search performed by a private actor who is not acting as an agent of the government. People v. McKendrick , 188 Mich.App. 128, 141, 468 N.W.2d 903 (1991). Appellants have not established that the installation of either a transmitting or a nontransmitting AMI meter constitutes a search or, even if it did, that Consumers was acting as an agent of the government.
The argument that the installation of a smart meter constituted state action and violated a customer's Fourth Amendment protections was raised and rejected in Stenman , 311 Mich.App. 367, 875 N.W.2d 767. In that case, Detroit Edison filed suit in circuit court against the defendants who had removed a smart meter installed on their property. Id . at 370-371, 875 N.W.2d 767. The defendants filed a counterclaim alleging, among other things, that the smart meter was a surveillance device, the installation of which violated the Fourth Amendment. Id . at 372, 875 N.W.2d 767. The trial court granted partial summary disposition in favor of the plaintiff. Id. at 373-374, 875 N.W.2d 767. On appeal, the defendants argued that the installation of a smart meter on their home constituted a warrantless search and therefore violated the Fourth Amendment. This Court disagreed, stating:
The United States and Michigan Constitutions guarantee every person's right to be free from unreasonable searches. U.S. Const., Am. IV ; Const. 1963, art. 1, § 11. However, in order for Fourth Amendment protections to apply, the government must perform a search. Lavigne v. Forshee , 307 Mich.App. 530, 537, 861 N.W.2d 635 (2014) ; see also People v. Taylor , 253 Mich.App. 399, 404, 655 N.W.2d 291 (2002), citing Katz v. United States , 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "[T]he Fourth Amendment proscribes only government action and is not applicable to a search or seizure, even an unreasonable one, conducted *493 by a private person not acting as an agent of the government or with the participation or knowledge of any government official." People v. McKendrick , 188 Mich.App. 128, 141, 468 N.W.2d 903 (1991) ; see also id. at 142-143 [468 N.W.2d 903] (identifying two factors that must be shown in order to conclude that a search is proscribed by the Fourth Amendment).
First, defendants have not shown, or even argued, that an illegal search has already been performed through the smart meter that was installed on their property. Instead, their arguments in the lower court and on appeal focus on the potential for smart meters to collect information from the homes of Americans in the future. Further, defendants have failed to establish that plaintiff's installation of smart meters constitutes governmental action for Fourth Amendment purposes. Even if the state and federal governments have advocated or *415 incentivized, as a matter of public policy, the use of smart meters, there is no indication that the government controls the operations of plaintiff, an investor-owned electric utility, or that plaintiff acts as an agent of the state or federal governments. Accordingly, we reject defendants' claim that plaintiff's installation of a smart meter violated their Fourth Amendment rights. [ Stenman , 311 Mich.App. at 387-388, 875 N.W.2d 767 (alteration in original).]
RCG and Rison have made no attempt to distinguish Stenman ; in fact, RCG and Rison make no reference to the case. This Court's decision in Stenman controls on this issue, MCR 7.215(C)(2), and mandates rejection of RCG and Rison's argument.
Finally, RCG and Rison argue that the PSC's order unlawfully and unreasonably continues surcharges on customers who opt out of the AMI program.
Ratemaking is a legislative, rather than a judicial, function. For that reason, the doctrines of res judicata and collateral estoppel do not apply in a strict sense. Nevertheless, factual "issues fully decided in earlier PSC proceedings need not be 'completely relitigated' in *494 later proceedings unless the party wishing to do so establishes by new evidence or a showing of changed circumstances that the earlier result is unreasonable." In re Application of Consumers Energy Co. for Rate Increase , 291 Mich.App. 106, 122, 804 N.W.2d 574 (2010), quoting Pennwalt Corp. v. Pub. Serv. Comm. , 166 Mich.App. 1, 9, 420 N.W.2d 156 (1988).
RCG and Rison contend that surcharges, including a one-time charge paid by a customer who declines to have a smart meter installed or who requests that a smart meter be removed, as well as a monthly surcharge, are not supported by the requisite evidence and should have been eliminated by the PSC.
This issue was recently decided by the PSC in another case on remand from this Court. In In re Application of Consumers Energy Co. , order of the Public Service Commission, entered July 12, 2017 (Case No. U-17087), another matter involving Consumers Energy Company, the PSC entered an order on June 28, 2013, approving opt-out fees for customers who requested a non-transmitting meter. The Attorney General and individual appellant Rison, among others, appealed the PSC's order and challenged the imposition and the amount of the opt-out fees. In Attorney General v. Pub. Serv. Comm. , unpublished per curiam opinion of the Court of Appeals, issued April 30, 2015, 2015 WL 1963051 (Docket Nos. 317434 and 317456), this Court, in Docket No. 317456,[3] remanded the matter to the PSC to conduct a contested-case hearing to examine the opt-out tariff.
*495 In an order entered March 29, 2016, in Case No. U-17087, the PSC indicated that on remand it would address the purpose of the opt-out fees, whether the fees constituted reimbursement for the cost of services related to nontransmitting meters, *416 and whether any of the costs were already accounted for in Consumers' base rates.
On January 19, 2017, the ALJ issued a PFD, finding that the opt-out fees represented reimbursement for the costs of service and that no expenses related to Consumers' opt-out program were accounted for in Consumers' base rates. The ALJ recommended that the PSC reaffirm its June 28, 2013 decision.
On July 12, 2017, the PSC issued an order on remand in Case No. U-17087, adopting the findings and recommendations in the PFD. The PSC found that the opt-out tariffs were cost-based and that Consumers provided an explanation of the cost-of-service principles used to determine those tariffs. Specifically, the PSC stated that
[o]pt-out fees represent incremental costs that are incurred solely in order to be able to offer the opt-out program; opt-out customers are protected by the credits from the costs of AMI, and customers who use standard equipment are protected from subsidizing customers who choose non-standard equipment. The amounts collected from opt-out customers are credited to base rate calculations to ensure that there is no double recovery. The Court of Appeals has found that smart meters are standard utility equipment, and that the choice of metering technology is a utility management prerogative. The opt-out tariff collects costs associated with the development and *496 operation of a non-standard metering option. The Commission has previously rejected the RCG's argument regarding the use of self-reads as an alternative to the opt-out program. The Commission has made it a priority to limit estimated and customer self-reading of meters in order to increase the accuracy of meter reading and billing. Commission rules require utilities to read a certain percentage of electric meters. [In re Application of Consumers Energy Co. to Increase Rates , order of the Public Service Commission, entered July 12, 2017 (Case No. U-17087), p 12 (citations omitted).]
The PSC ultimately affirmed the opt-out tariffs and credits related to the tariffs originally approved in the June 28, 2013 order in Case No. U-17087. Id . at 16.
In the instant case, RCG and Rison are requesting that this Court examine the opt-out fees in a manner similar to that undertaken by the PSC in Case No. U-17087. We decline to do so and defer to the decision on remand issued by the PSC in Case No. U-17087. That decision is based on previous decisions of the PSC and this Court. Appellants seek to reargue the matter yet again but have put forth nothing that would require this Court to conclude that the previous decision as reflected most recently in the order in Case No. U-17087 is unreasonable and should not be followed. See In re Application of Consumers Energy Co. , 291 Mich.App. at 122, 804 N.W.2d 574.
Affirmed.
Markey, P.J., and Ronayne Krause and Boonstra, JJ., concurred.

If the PSC does not issue an order within 180 days after the filing of an application for a rate increase, a utility may self-implement a rate increase up to the amount requested. If the utility does so and the PSC issues an order approving a rate increase lower than that requested, the utility must refund the excess amount collected to its customers. MCL 460.6a(2).

An AMI meter measures and records real-time data on power consumption and reports that consumption to the utility on a regular basis. An AMI meter is also known as a "smart meter." See In re Application of Detroit Edison Co. , 296 Mich.App. 101, 114, 817 N.W.2d 630 (2012). The PSC has issued a series of orders approving Consumers' pilot AMI program, In re Application of Consumers Energy Co. , order of the Public Service Commission, entered November 4, 2010 (Case No. U-16191); authorizing Consumers to proceed with Phase 2 of its AMI deployment program In re Application of Consumers Energy Co. , order of the Public Service Commission, entered June 7, 2012 (Case No. U-16794); and granting rate relief for and authorizing continuation of the program, In re Application of Consumers Energy Co. , order of the Public Service Commission, entered July 12, 2017 (Case No. U-17087).

In In re Application of Consumers Energy to Increase Electric Rates , 498 Mich. 967, 873 N.W.2d 108 (2016), our Supreme Court reversed the portion of this Court's decision that addressed the Attorney General's claim of appeal in Docket No. 317434 and remanded the case for consideration of the merits of that appeal. This Court thereafter issued a published decision in Docket No. 317434. In re Application of Consumers Energy to Increase Electric Rates (On Remand) , 316 Mich.App. 231, 891 N.W.2d 871 (2016). However, this Court's initial decision in Docket No. 317456 was not affected by the Supreme Court's remand order or this Court's decision on remand. See id . at 234 n. 1, 891 N.W.2d 871.