# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* APPLICATION OF DTE ELECTRIC
COMPANY FOR 2015 RECONCILIATION.

---

DTE ELECTRIC COMPANY,

        Petitioner-Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee.

UNPUBLISHED
December 6, 2018

No. 339557
MPSC
LC No. 00-017680-R

---

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Petitioner, DTE Electric Company (DTE), appeals as of right an order entered by the Michigan Public Service Commission (PSC) that, in relevant part, disallowed DTE's request to include a refund in its 2015 power supply cost recovery (PSCR) reconciliation balance under MCL 460.6j.[1] The refund was issued by DTE in 2015, as a consequence of overbilling a major customer for electrical power between 2008 and 2014. The PSC concluded that because the refund was for power consumed outside of the 12-month reconciliation period for 2015, it could not be included in the reconciliation. The PSC therefore denied DTE's request. We reverse in part and remand.

## I. INTRODUCTION

One of the ways in which an electric utility can recover its power supply costs from its customers is by including a "PSCR clause" in its rate schedule. See *In re App of Consumers Energy Co for Reconciliation of 2009 Costs*, 307 Mich App 32, 35 n 1; 859 NW2d 216 (2014),

---

[1] While this matter was pending in the PSC, the Legislature amended MCL 460.6j pursuant to 2016 PA 341. The PSC did not specify which version of the statute it used; however, neither we nor the parties have discovered any substantive alterations of relevance to the instant appeal. Therefore, all references to MCL 460.6j in this opinion will be to the prior version of the statute, which was in effect during the 2015 reconciliation period at issue.

aff'd on alternative grounds 499 Mich 885 (2016). "PSCR" stands for "power supply cost recovery." See MCL 460.6j(1). This Court has explained the PSCR process as follows:

> A PSCR clause is "a clause in the electric rates or rate schedule of a utility which permits the monthly adjustment of rates for power supply to allow the utility to recover the booked costs, including transportation costs, reclamation costs, and disposal and reprocessing costs, of fuel burned by the utility for electric generation and the booked costs of purchased and net interchanged power transactions by the utility incurred under reasonable and prudent policies and practices." MCL 460.6j(1)(a). Each year, a utility with a PSCR clause in its rate schedule must file a PSCR plan for the upcoming year and a five-year forecast of power supply requirements. MCL 460.6j(3) and (4). The PSC approves, disapproves, or modifies the proposed PSCR plan. MCL 460.6j(6). After the end of the year, the PSC conducts a reconciliation case in which it makes adjustments to take into account the utility's true cost of supplying power. MCL 460.6j(12) and (13). [*In re App of Indiana Michigan Power Co*, 275 Mich App 369, 370-371; 738 NW2d 289 (2007).]

"Electric utilities can recover two types of power supply costs through a PSCR clause: (1) 'booked costs, including transportation costs, reclamation costs, and disposal and reprocessing costs, of fuel burned by the utility for electric generation;' or (2) 'booked costs of purchased and net interchanged power transactions.' " *Attorney General v Pub Service Comm*, 483 Mich 998, 998; 764 NW2d 278 (2009), quoting MCL 460.6j(1)(a).

In very general terms, the PSC compares an electric utility's revenues to its costs, "reconciles" the two, and permits the electric utility to adjust its rates accordingly. See *Attorney General v Pub Service Comm*, 237 Mich App 27, 30; 602 NW2d 207 (1999). If the utility collected more revenue than its costs, it must refund or credit the excess to its customers. MCL 460.6j(14) and (16). If it collected less revenue than its costs, it may recover the difference from its customers. MCL 460.6j(15) and (16).[2]

## II. FACTUAL BACKGROUND

---

[2] In part, MCL 460.6j(16) states, "Costs incurred by the utility for refunds and interest on refunds shall not be charged to customers." In context, this appears to refer to refunds issued as a consequence of the reconciliation process and therefore does not pertain to the refund at issue here. Furthermore, DTE argued at oral argument, and the PSC did not dispute, that the term "costs . . . for refunds" is understood to mean ancillary costs such as postage, processing, or programming, rather than the refund itself. Either understanding is supported by the lack of discussion of this sentence below. Consequently, we conclude that this sentence is irrelevant to the instant appeal. The Severstal refund is an entirely different kind of refund than a reconciliation refund, which "enjoys a broader meaning" because it can also encompass an adjustment of future rates in addition to a direct repayment of money. *In re Detroit Edison Co Application*, 297 Mich App 377, 385-387; 823 NW2d 433, 437 (2012), result aff'd but criticized on other grounds 495 Mich 884 (2013).

Between 2008 and 2014, DTE overbilled one of its large customers for electricity, due to an undiscovered technical error. The customer, Severstal Dearborn, LLC (Severstal), which is not a party to the instant matter, discovered the error in 2014, whereupon it filed a complaint against DTE with the PSC. In 2015, the PSC ordered DTE to repay approximately $19.65 million to Severstal, plus 7% interest. Notably, it is undisputed, and in fact expressly admitted by both parties at oral argument, that because of Severstal's overpayment, DTE's other customers enjoyed artificially lowered energy rates in 2008 through 2014. Consequently, DTE did not profit from the overbilling.

The instant proceeding is a separate reconciliation proceeding. In relevant part, DTE sought to have approximately $13.45 million of the Severstal refund considered a "negative revenue" in 2015 for the purpose of reconciliation. DTE contends that this amount reflects only "the PSCR portion" of the Severstal refund, and it therefore excludes the substantial interest DTE was required to pay.[3] If that amount is "reconciled," DTE would be permitted to raise its energy rates to counteract that loss. In effect, DTE would theoretically recoup the windfall from the same customers who previously enjoyed it. The PSC rejected DTE's request. The PSC held that the Severstal refund could not be reconciled in 2015 because it represented "lost PSCR revenue from the cost of power supply consumed between the years 2008 and 2014," and therefore outside "[t]he 12-month period covered by DTE Electric's PSCR plan [which] began on January 1, 2015 and ended December 31, 2015."

### III. STANDARD OF REVIEW

As this Court recently explained in *In re Reliability Plans of Electric Utilities for 2017-2021*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 340600), slip op at 8, lv pending:

> To be valid, a final order of the MPSC must be authorized by law, and also must be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Pub Serv Comm*, 165 Mich App 230, 235; 418 NW2d 260 (1988). Agencies have authority to interpret the statutes that they administer and enforce, *Clonlara, Inc v State Board of Ed*, 442 Mich 230, 240; 501 NW2d 88 (1993), and we respectfully consider an agency's interpretation of a statute that it is empowered to execute, and will not overrule that construction absent cogent reasons. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008). But the construction the [PSC] gives to a statute is not binding on the courts. *Id.* Ultimately, the statutory language itself is controlling, *id.* at 108, and this Court will neither abandon nor delegate its responsibility to determine legislative intent.

---

[3] At oral argument, DTE was asked what incentive it had "to get it right" if it was allowed to reconcile the PSCR portion of the Severstal refund. DTE observed that at most it would be "getting our principle back," without the benefit of "interest going back to 2008." It appears that, in contrast, the 7% interest imposed upon the refund requires DTE to compensate Severstal for Severstal's lost benefit of that interest.

*Consumers Energy Co*[ *v Pub Service Comm*], 268 Mich App [171,] 174-175[; 707 NW2d 633 (2005)]. Moreover, we review de novo issues of statutory interpretation, *Uniloy Milacron USA Inc v Dep't of Treasury*, 296 Mich App 93, 96; 815 NW2d 811 (2012), including the MPSC's determinations regarding the scope of its own authority. *Consumers Power Co v Pub Serv Commission*, 460 Mich 148, 157; 596 NW2d 126 (1999); *In re Application of Consumers Energy Co to Increase Rates*, 316 Mich App 231, 237; 891 NW2d 871 (2016). In sum, when considering the construction given to a statute by an agency, our ultimate concern is the proper construction of the plain language of the statute regardless of the agency's interpretation, *Rovas*, 482 Mich at 108, and our primary obligation is to discern and give effect to the Legislature's intent. *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 167; 895 NW2d 154 (2017).

Additionally, we review de novo questions of constitutional law and questions concerning subject-matter jurisdiction. *In re Consumers Energy Co*, 322 Mich App 480, 491; 913 NW2d 406 (2017); *In re Petition of Wayne Co Treasurer for Foreclosure*, 286 Mich App 108, 110; 777 NW2d 507 (2009). The relevant facts are not meaningfully disputed, and the PSC's final decision set forth no factual findings that DTE challenges on appeal.

In particular, we note that several relevant facts are undisputed or presumed. First, the Severstal refund was money with which DTE parted in 2015. Second, the Severstal refund reflects a return of money collected outside of 2015, for power that was consumed outside of 2015. Furthermore, DTE did not truly profit from the overcollection; rather, the overcollection benefitted DTE's customers, and those customers would also bear the burden if the refund were to be "reconciled." Finally, the PSC did not actually render a final decision about whether the overcollection was due to DTE acting unreasonably and imprudently. Although the PSC "rejected" the ALJ's finding that DTE incurred the overbilling by acting imprudently and unreasonably, the PSC did so because it deemed "that line of inquiry" unnecessary. Therefore, we presume, but explicitly do not decide, that DTE acted reasonably and prudently at all relevant times.

## IV. THE RECONCILIATION PERIOD

We first conclude that reconciliations cover a 12-month period. Subsection (12) indicates that the reconciliation process must occur "[n]ot less than once a year" and that the PSC must "commence" it "not later than 3 months after the end of *the 12-month period* covered by a utility's power supply cost recovery plan[.]" (Emphasis added.) When discussing what is to be reconciled, subsection (12) further provides:

> At the power supply cost reconciliation the commission shall reconcile the revenues recorded pursuant to the power supply cost recovery factors and the allowance for cost of power supply included in the base rates established in the latest commission order for the utility with the amounts actually expensed and included in the cost of power supply by the utility. The commission shall consider any issue regarding the reasonableness and prudence of expenses for which customers were charged if the issue was not considered adequately at a previously conducted power supply and cost review. [MCL 460.6j(12).]

-4-

This language must be read in context. *Madugula v Taub*, 496 Mich 685, 696; 853 NW2d 75 (2014). In particular, subsections (3), (6), and (10) clearly indicate that PSCR plans always cover a discrete, specific "12-month period." Referring to "the 12-month period" would make no sense unless it means the particular 12-month period covered by a particular PSCR plan. This is consistent with commencing a reconciliation yearly, and at a time specifically tied to "the 12-month period." It is also consistent with the express provision of a mechanism for considering certain prior expenses "not considered adequately at a previously conducted power supply and cost review."

It follows that the subsections under which the PSC may order a recovery from (or a refund to) a utility's customers must pertain to the same period. The specific authorization for any recovery from DTE's customers is found in subsection (15), which states in relevant part:

> In its order in a power supply cost reconciliation, the commission shall authorize a utility to recover from customers any net amount by which the amount determined to have been recovered over the period covered was less than the amount determined to have been actually expensed by the utility for power supply, and to have been incurred through reasonable and prudent actions not precluded by the commission order in the power supply and cost review. [MCL 460.6j(15).]

Because these subsections address orders "in a power supply cost reconciliation," it would again make no sense unless "the period covered" is the same period considered at the reconciliation. Therefore, "the period covered" must be the specific 12-month period covered by the PSCR plan at issue. In this case, that period would be January 1, 2015 through December 31, 2015.

## V. DEFINING THE SEVERSTAL REFUND

The central issue in this appeal is how to define the Severstal refund. Again, the Severstal refund consists of money that left DTE's coffers in 2015. The money satisfies a return of monies that were overcollected between 2008 and 2014. DTE did not benefit from that overcollection, and because the refund includes interest that DTE cannot ever recover, DTE would remain "in the negative" even with the reconciliation of the $13.45 million it seeks. Between 2008 and 2014, DTE's customers benefitted from the overpayment, and reconciliation would mean those customers must return their windfall. The one characterization upon which both parties expressly agree is that the Severstal refund is *not* an "expense."

DTE argues that the Severstal refund is a "negative revenue" because it is a "revenue recorded," albeit a negative one. The PSC argues that the refund is "not a *cost of power supply* but lost revenue from the *cost of power consumed*" (emphasis in original). Therefore, both parties seemingly also agree that the Severstal refund was some kind of revenue. However, DTE has not provided us with a definition of "negative revenue," and the PSC protests that it does not know how a "negative revenue" would be defined. Finding no helpful definitions[4] in either

---

[4] DTE stated that "expenses" are defined under the Michigan Public Service Commission Act, but we have not found any such express statutory definition, nor has either party cited to one.

party's briefs or in the Act, we turn to a dictionary. See *In re Certified Question from the United States Court of Appeals for the Ninth Circuit (Deacon v Pandora Media, Inc)*, 499 Mich 477, 484-485; 885 NW2d 628 (2016).

An "expense" may be defined as synonymous with expenditure or cost, or "something expended to secure a benefit or bring about a result." *Merriam-Webster's Collegiate Dictionary (11ᵗʰ ed)*, p 440. However, accounting terminology suggests that "expense" and "expenditure" have distinct meanings. Although both may entail an exchange of value for value, an expenditure particularly refers to the outlay of money itself, whereas an expense particularly refers to using up an asset or exchanging that asset for revenue. See Siegel & Shim, *Dictionary of Accounting Terms, 3d ed* (Hauppage, New York: Barron's, 2000), pp 169-170.[5] A "cost" may be defined as a penalty incurred, as "the amount or equivalent paid or charged for something," or as an "outlay or expenditure." *Merriam-Webster's*, p 282. In accounting terminology, "[t]he concepts of cost and expense are often used interchangeably," but a cost would generally be a "sacrifice, measured by the price paid, to acquire, produce, or maintain goods or services." *Dictionary of Accounting Terms*, p 104. Finally, "revenue" may be treated as gross income or total income from a particular source. *Merriam-Webster's*, p 1066. In accounting terminology, it means an "increase in the assets of an organization or the decrease in liabilities during an accounting period, primarily from the organization's operating activities." *Dictionary of Accounting Terms*, p 380.

We conclude that at least for accounting purposes, the concepts of "expense," "expenditure," and "cost" all nominally imply a degree of exchange for value. Clearly, the Severstal refund was *not* exchanged for any value. We are therefore inclined to agree with the parties that it was neither an "expense" nor a "cost." In contrast, "revenue" appears to pertain more simply to money or assets transferred to an entity. Rather than leave the Severstal refund in an undefined limbo, we conclude that "lost revenue," as the PSC puts it, most sensibly[6] fits the definition of "revenue," with the modifier "negative" merely indicating the direction of that revenue. See, e.g., "negative income tax," *Merriam-Webster's*, p 829. In other words, "revenue" pertains to an inflow of money, and "negative revenue" therefore pertains to an outflow of money. We therefore accept and adopt DTE's contention that the Severstal refund is a "negative revenue" that indisputably occurred during 2015.

## VI. CONSIDERATION OF THE SEVERSTAL REFUND

---

[5] See also, discussions online at https://www.accountingtools.com/articles/2017/5/6/expense and https://www.accountingcoach.com/blog/difference-expense-expenditure.

[6] Our Supreme Court has rejected "the so-called 'absurd result' rule of statutory construction." *Piccalo v Nix*, 466 Mich 861; 643 NW2d 233 (2002), citing *People v McIntire*, 461 Mich 147, 155-156, n 2; 599 NW2d 102 (1999). However, the discussion in *McIntire* concerned a departure from the literal language of a statute on the grounds that the literal result would be unwise. *McIntire*, 461 Mich at 155-159. If construction of a statute is necessary, any such construction should nevertheless avoid an absurd result to the extent consistent with its plain language. See *Rafferty v Markovitz*, 461 Mich 265, 270; 602 NW2d 367 (1999).

Having concluded that the Severstal refund is a "negative revenue," DTE next argues that the PSC is required to include it in the 2015 reconciliation. However, the reconciliation process does not include *any* revenue, but rather "revenues *recorded pursuant to the power supply cost recovery factors*." MCL 460.6j(12) (emphasis added). Therefore, whether the Severstal refund is a "revenue" does not end the inquiry.

The Act defines "power supply cost recovery factor" as:

that element of the rates to be charged for electric service to reflect power supply costs incurred by an electric utility and made pursuant to a power supply cost recovery clause incorporated in the rates or rate schedule of an electric utility. [(MCL 460.6j(1)(b)).]

A PSCR clause permits the recovery of "(1) 'booked costs, including transportation costs, reclamation costs, and disposal and reprocessing costs, of fuel burned by the utility for electric generation;' or (2) 'booked costs of purchased and net interchanged power transactions.' " *Attorney General*, 483 Mich at 998, quoting MCL 460.6j(1)(a). Notably, a PSCR *clause* is distinct from a PSCR *plan*. A PSCR clause appears to be a durable part of a utility's rates, rather than specific to a particular year. "Pursuant to" means "in carrying out" or "in conformity with." *Merriam-Webster's*, p 1011. Alternately, it means "in compliance with; in accordance with; under." *Black's Law Dictionary (8th ed)*, p 1272. We conclude that "revenues recorded pursuant to the power supply cost recovery factors" means revenues that pertain to the costs recoverable under a PSCR clause.

As noted, DTE contends that the $13.45 million it seeks to reconcile is the "PSCR portion" of its payment to Severstal. According to the proposal for decision by the ALJ, the PSC's staff did not dispute that characterization. In its final decision, the PSC reiterated that its staff had not disputed that the $13.45 million is a "PSCR expense," and nowhere in the final decision do we find any indication that the PSC or its staff took any subsequent exception to that characterization. We adopt what appears to be an undisputed fact: that the $13.45 million portion of the Severstal refund is a "revenue recorded pursuant to the power supply cost recovery factors," notwithstanding the fact that it is negative. Because the revenue itself occurred in 2015, it must be reconciled as part of the 2015 reconciliation.

We briefly observe that our conclusion appears to be consistent with past PSC practices, as reflected by the two PSC cases discussed below. In *In re the application of DTE Electric Company for reconciliation of its power supply cost recovery plan for the 12-month period ending December 31, 2013*, MPSC Case No. U-17097-U, DTE received a payment of $28,607,330 from Consumers Energy in 2013 compensating for a 2008 billing error by a third party, and the PSC included that payment in DTE's 2013 reconciliation. In *In re the application of Consumers Energy Company for the reconciliation of power supply cost recovery costs and revenues for the Calendar Year 2012*, MPSC Case No. U-16890-R, the same payment was

included in Consumers Energy's 2012 reconciliation, even though it made the payment in 2013[7] and the billing errors occurred between 2008 and 2011. We do not mean to suggest that the PSC is bound by *stare decisis* and we recognize the PSC's explanation that those cases are factually distinguishable from the instant matter. Nevertheless, even considering the factual differences, those cases clearly reflect an understanding that a refund addressing costs that occurred in other plan-years may be reconciled in the year the refund itself occurs.[8]

Therefore, we conclude that the PSC erred by refusing to reconcile the PSCR portion of the Severstal refund, which is not disputed to be the $13.45 million at issue here.

## VII. CONSIDERATION OF "EXPENSES" FROM PRIOR YEARS

The final sentence of MCL 460.6j(12) provides that "[t]he commission shall consider any issue regarding the reasonableness and prudence of expenses for which customers were charged if the issue was not considered adequately at a previously conducted power supply and cost review." "Shall" is mandatory, and "any" is all-inclusive. See *McGrath v Clark*, 89 Mich App 194, 197; 280 NW2d 480 (1979), superseded by rule on other grounds as stated in *Young v Robin*, 146 Mich App 552, 556 n 2; 382 NW2d 182 (1985). This sentence does not itself explicitly reference reconciliation. However, the parties agree that it serves as a limited exception to the general prohibition against reconciling expenses for power supplied outside of the PSCR period under consideration. Despite the extensive briefing dedicated to this sentence, the parties at oral argument otherwise concluded that it was not, in fact, the proper basis for resolving this appeal. We therefore decline to address it.

Nevertheless, the proceedings before the ALJ involved considerable dispute about whether the overbilling occurred due to DTE acting in an unreasonable and imprudent manner. The PSC ultimately "rejected" the ALJ's finding regarding that issue, because it concluded that the basis for its final decision rendered it "unnecessary for the Commission to consider or discuss that line of inquiry." We expressly reject both parties' arguments pertaining to whether DTE *did* act in an unreasonable and imprudent manner. Because the PSC did not decide that factual issue, we will not review or consider it.

The PSC has requested that, in light of our conclusion that it erred by failing to reconcile the PSCR portion of the Severstal refund, we remand for an express decision as to whether DTE acted unreasonably and imprudently. Because we decline to consider the last sentence of MCL 460.6j(12), we decline to impose such a specific requirement upon the PSC. However, we direct that on remand, the PSC shall permit the parties to submit further briefing on the issue, including

---

[7] Consumers Energy used a bookkeeping methodology that required the payment to be booked in 2012.

[8] The PSC argues that it has the *discretion* to allow such a reconciliation if the equities are proper, but has been unable to articulate any source for that discretion, any guidelines for how to exercise that discretion, or how to identify when the equities are proper.

whether it would be proper for the PSC to make such a decision at this time. We express no opinion on the matter.

## VIII. UNCONSTITUTIONAL TAKING

DTE finally argues that the PSC's disallowance of the Severstal refund from the 2015 reconciliation effectuates an unconstitutional taking of its property. In light of our resolution of the other issues in this appeal, we need not address this argument. However, for the benefit of the bench and bar, we briefly clarify that in *Champion's Auto Ferry, Inc v Pub Service Comm*, 231 Mich App 699, 717; 588 NW2d 153 (1998), we did not hold that the Court of Claims was the *only* avenue for relief available to a party that believes it has suffered an unconstitutional taking from the actions of an administrative agency. Rather, we held that it was unnecessary for us to address the appellant's takings argument at that time because commencing suit in the Court of Claims would remain *an* option for the appellant in the future. Indeed, "when a constitutional issue is intermingled with issues properly before an administrative agency," the proper procedure is generally not a separate action, but to pursue the constitutional claim on direct appeal from the administrative agency. See *Womack-Scott v Dep't of Corrections*, 246 Mich App 70, 79-81; 630 NW2d 650 (2001). We hold only that DTE's takings claim, if any, is not yet ripe for our review, and pursuant to *Champion's Auto Ferry*, DTE will not be precluded from pursuing it in the future should it have the need.

## IX. CONCLUSION

The PSC's order is reversed to the extent it found that the $13.45 million PSCR portion of the Severstal refund cannot be included in DTE's 2015 reconciliation under MCL 460.6j. We do not disturb any other portion of the PSC's order. We decline to address DTE's constitutional takings issue. We express no opinion whether DTE incurred the expenses underlying the Severstal refund by acting in an unreasonable and imprudent manner, nor do we express any opinion whether that issue is a proper consideration at this time. However, on remand the PSC shall permit the parties to submit further briefs regarding whether it is required to make that determination pursuant to the final sentence of MCL 460.6j(12), what its factual findings should be, and how any such findings may be relevant to the ultimate reconciliation.

Reversed in part and remanded as set forth above. We do not retain jurisdiction. We direct that the parties shall bear their own costs. MCR 7.219(A).

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

-9-