*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Application of DTE ELECTRIC COMPANY to Increase Rates.

RESIDENTIAL CUSTOMER GROUP,

        Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION and MICHIGAN CABLE TELECOMMUNICATIONS ASSOCIATION,

        Appellees,

and

DTE ELECTRIC COMPANY,

        Petitioner-Appellee.

UNPUBLISHED
April 2, 2020

No. 344811
Public Service Commission
Case No. 00-018255

---

*In re* Application of CONSUMERS ENERGY COMPANY to Increase Rates.

RESIDENTIAL CUSTOMER GROUP,

        Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION and MICHIGAN CABLE TELECOMMUNICATIONS ASSOCIATION,

        Appellees,

and

No. 344821
Public Service Commission
Case No. 00-018322

CONSUMERS ENERGY COMPANY,

Petitioner-Appellee.

---

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

In these consolidated appeals, the Residential Customer Group (Residential) appeals two separate orders of the Michigan Public Service Commission (MPSC) insofar as the orders authorized the two appellee electric providers, DTE Electric Company (DTE) and Consumers Energy Company (Consumers), to recover in their rates certain costs relating to their development and deployment of advanced metering infrastructure (AMI) and authorizing them to impose surcharges on customers who elect to opt out of the AMI program. We affirm.

## I. STANDARD OF REVIEW

In accordance with *In re Consumers Energy Co*, 322 Mich App 480, 486-487; 912 NW2d 406 (2017):

> The standard of review for [M]PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the [M]PSC are presumed, prima facie, to be lawful and reasonable. A party aggrieved by an order of the [M]PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a [M]PSC order is unlawful, the appellant must show that the [M]PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. An order is unreasonable if it is not supported by the evidence.

> A final order of the [M]PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

> We give due deference to the [M]PSC's administrative expertise and will not substitute our judgment for that of the [M]PSC. We give respectful consideration to the [M]PSC's construction of a statute that the [M]PSC is empowered to execute, and this Court will not overrule that construction absent cogent reasons. If the language of a statute is vague or obscure, the [M]PSC's construction serves as an aid in determining the legislative intent and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. However, the construction given to a statute by the [M]PSC is not binding on us. Whether the [M]PSC exceeded the scope of its authority is a question of law that is reviewed de novo. [Citations omitted.]

## II. ANALYSIS

Residential first argues that the MPSC lacked authority to approve the continued implementation of AMI program, including attendant opt-out surcharges. We disagree.

Whether the MPSC exceeded the scope of its authority is a question of law calling for review de novo. *In re Complaint of Pelland Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003). Under MCL 460.6(1), the MPSC "is vested with complete power and jurisdiction to regulate all public utilities in the state except a municipally owned utility, the owner of a renewable resource power production facility . . . , and except as otherwise restricted by law." The MPSC's general ratemaking authority includes the "discretion to determine what charges and expenses to allow as costs of operation." *Ford Motor Co v Pub Serv Comm*, 221 Mich App 370, 375; 562 NW2d 224 (1997). "The power to fix and regulate rates, however, does not carry with it, either explicitly or by necessary implication, the power to make management decisions." *Union Carbide Corp v Pub Serv Comm*, 431 Mich 135, 148; 428 NW2d 322 (1988).

This Court has already entertained a challenge to the MPSC's authority to approve of the AMI program generally, and surcharges for opting out specifically, in a case to which Residential was a party. In *In re Consumers Energy Co to Increase Rates*, 322 Mich App at 489, Residential argued, as here,

> that the [M]PSC lacked the authority, absent specific statutory guidance, to mandate the installation of smart meters in customers' homes by approving Consumers' smart-meter program and its attendant tariffs on an "opt-out" basis. [Residential] specifically argue[d] that in prior uncontested cases, the [M]PSC foreclosed the presentation of evidence concerning health questions and privacy matters related to smart meters and that this defective process prevented the introduction of evidence regarding an alternative "opt-in" approach that would have respected customer choices and concerns. [*Id*. at 489.]

This Court rejected Residential's arguments, finding "that the [M]PSC did not lack the authority to approve implementation of the smart-meter program and the attendant fees on customers." *Id*. at 490. Specifically, this Court recognized that "[t]he [M]PSC has broad authority to regulate rates for public utilities, but that authority does not include the power to make management decisions for utilities." *Id*. While this Court agreed that "the [M]PSC has no statutory authority to enable Consumers to require all its customers to participate in the AMI program and accept a smart meter or to pay fees if they choose to opt out of the AMI program," this Court emphasized that the absence of such statutory authority is

> because the decision regarding the type of equipment to deploy as an upgrade to infrastructure can only be described as a management prerogative. Consumers applied for approval of its AMI program; but that fact does not mandate a conclusion that Consumers' decision regarding the type of meters to use is not a management decision. [*In re Consumers Energy Co*, 322 Mich App at 490.]

In addition, this Court determined:

> Consumers proposed opt-out fees, calculated on the basis of cost-of-service principles, that would be imposed only on those customers who chose not to participate in the AMI program. The fees were designed to cover the additional costs of providing service to those customers. Accordingly, approval of the opt-out fees was a proper exercise of the [M]PSC's ratemaking authority. [*Id.* at 491 (citations omitted).]

This Court has also addressed Residential's arguments pertaining to whether sufficient evidence was adduced below regarding the cost-based nature of the tariffs imposed and the potential for opt-out customers to self-read their meters. Initially, before discussing the substance of the issue, this Court recognized:

> Ratemaking is a legislative, rather than a judicial, function. For that reason, the doctrines of res judicata and collateral estoppel do not apply in a strict sense. Nevertheless, factual "issues fully decided in earlier [M]PSC proceedings need not be 'completely relitigated' in later proceedings unless the party wishing to do so establishes by new evidence or a showing of changed circumstances that the earlier result is unreasonable." [*In re Consumers Energy Co*, 322 Mich App at 493-494 (citations omitted).]

In the earlier rejection of Residential's claims, this Court reviewed the history of this issue in the MPSC as follows:

> This issue was recently decided by the [M]PSC in another case on remand from this Court. In *In re Application of Consumers Energy Co*, order of the Public Service Commission, entered July 12, 2017 (Case No. U-17087), . . . the [M]PSC entered an order on June 28, 2013, approving opt-out fees for customers who requested a non-transmitting meter. The Attorney General and individual appellant [Michelle] Rison, among others, appealed the [M]PSC's order and challenged the imposition and the amount of the opt-out fees. In *Attorney General v Pub Serv Comm*, unpublished per curiam opinion of the Court of Appeals, issued April 30, 2015 (Docket Nos. 317434 and 317456), [rev'd in part on other grounds 498 Mich 967 (2016)], this Court, in Docket No. 317456, remanded the matter to the [M]PSC to conduct a contested-case hearing to examine the opt-out tariff.
>
> In an order entered March 29, 2016, in Case No. U-17087, the [M]PSC indicated that on remand it would address the purpose of the opt-out fees, whether the fees constituted reimbursement for the cost of services related to nontransmitting meters, and whether any of the costs were already accounted for in Consumers' base rates.
>
> On January 19, 2017, the [administrative law judge] issued a [proposal for decision], finding that the opt-out fees represented reimbursement for the costs of service and that no expenses related to Consumers' opt-out program were

accounted for in Consumers' base rates. The [administrative law judge] recommended that the [M]PSC reaffirm its June 28, 2013 decision.

On July 12, 2017, the [M]PSC issued an order on remand in Case No. U-17087, adopting the findings and recommendations in the [proposal for decision]. The [M]PSC found that the opt-out tariffs were cost-based and that Consumers provided an explanation of the cost-of-service principles used to determine those tariffs. Specifically, the [M]PSC stated that

> [o]pt-out fees represent incremental costs that are incurred solely in order to be able to offer the opt-out program; opt-out customers are protected by the credits from the costs of AMI, and customers who use standard equipment are protected from subsidizing customers who choose non-standard equipment. The amounts collected from opt-out customers are credited to base rate calculations to ensure that there is no double recovery. The Court of Appeals has found that smart meters are standard utility equipment, and that the choice of metering technology is a utility management prerogative. The opt-out tariff collects costs associated with the development and operation of a non-standard metering option. The Commission has previously rejected [Residential's] argument regarding the use of self-reads as an alternative to the opt-out program. The Commission has made it a priority to limit estimated and customer self-reading of meters in order to increase the accuracy of meter reading and billing. Commission rules require utilities to read a certain percentage of electric meters. [*In re Application of Consumers Energy Co. to Increase Rates*, order of the Public Service Commission, entered July 12, 2017 (Case No. U-17087), p 12 (citations omitted).]

The PSC ultimately affirmed the opt-out tariffs and credits related to the tariffs originally approved in the June 28, 2013 order in Case No. U–17087. *Id*. at 16.

In the instant case, [Residential is] requesting that this Court examine the opt-out fees in a manner similar to that undertaken by the [M]PSC in Case No. U-17087. We decline to do so and defer to the decision on remand issued by the [M]PSC in Case No. U-17087. That decision is based on previous decisions of the [M]PSC and this Court. Appellants seek to reargue the matter yet again but have put forth nothing that would require this Court to conclude that the previous decision as reflected most recently in the order in Case No. U-17087 is unreasonable and should not be followed. See *In re Application of Consumers Energy Co*, 291 Mich App [106,] 122; 804 NW2d 574 [(2010)]. [*In re Consumers Energy Co*, 322 Mich App at 494-496.]

Next, Residential raises various constitutional issues pertaining to the right to privacy, due process, and the Fourth Amendment, as well as the failure to adequately consider health and safety concerns of customers. We conclude that these arguments have no merit.

The Fourth Amendment of the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Fourth Amendment privacy rights are implicit in the concept of ordered liberty and are thus enforceable against the states through the Due Process Clause. *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961) (incorporating the Fourth Amendment against the states under the Fourteenth Amendment).

Residential argues that "the overly-intrusive operational capabilities of the smart meter serves as the platform for the invasion of privacy and that makes possible the unreasonable searches and seizures, or the mishandling of the private data of customers." However, this Court squarely addressed, and rejected, the arguments that Residential raises on appeal in *Detroit Edison Co v Stenman*, 311 Mich App 367; 875 NW2d 767 (2015); see also *In re Consumers Energy Co App*, 322 Mich at 492-493. In *Stenman*, this Court stated:

> [I]n order for Fourth Amendment protections to apply, *the government* must perform a search. [T]he Fourth Amendment proscribes only government action and is not applicable to a search or seizure, even an unreasonable one, conducted by a private person not acting as an agent of the government or with the participation or knowledge of any government official.
>
> First, defendants have not shown, or even argued, that an illegal search has already been performed through the smart meter that was installed on their property. Instead, their arguments in the lower court and on appeal focus on the potential for smart meters to collect information from the homes of Americans in the future. Further, defendants have failed to establish that plaintiff's installation of smart meters constitutes governmental action for Fourth Amendment purposes. Even if the state and federal governments have advocated or incentivized, as a matter of public policy, the use of smart meters, there is no indication that the government controls the operations of plaintiff, an investor-owned electric utility, or that plaintiff acts as an agent of the state or federal governments. Accordingly, we reject defendants' claim that plaintiff's installation of a smart meter violated their Fourth Amendment rights. [*Id*. at 387-388 (citations and quotations omitted).]

In this case, like in *Stenman*, Residential has not asserted—let alone established—that any governmental search has taken place through use of an AMI meter. Instead, Residential argues that there is a "potential for smart meters to collect information from the homes of Americans in the future." *Id*. Thus, Residential has only speculated that private information is being collected through the AMI meter. Furthermore, as acknowledged in *Stenman*, "[e]ven if the state and federal governments have advocated or incentivized, as a matter of public policy, the use of smart meters, there is no indication that the government controls the operations of . . . an investor-owned electric

utility, or that [the utility] acts as an agent of the state or federal governments." *Id*. at 387-388. Thus, Residential's Fourth and Fourteenth Amendment claim fails.[1]

Residential also complains that the methodology employed by Consumers and DTE for customers to opt-out of the AMI program provides inadequate notice and, thus, violates due process. Specifically, Residential argues that the smart meters were "force[d]" upon customers, who were not provided "an advance hearing process."

"Generally, due process in civil cases requires notice of the nature of the proceedings and an opportunity to be heard in a meaningful time and manner by an impartial decisionmaker." *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 29; 703 NW2d 822 (2005) (quotation marks and citations omitted). "The right to due process of law is a flexible concept and must be analyzed by considering the particular circumstances presented in a given situation." *In re Project Cost & Special Assessment Roll For Chappel Dam*, 282 Mich App 142, 150; 762 NW2d 192 (2009). As recognized above in connection with Residential's rejected Fourth Amendment claim, because the action complained of by DTE and Consumers does not comprise a governmental action, they cannot "be held liable for violations of the . . . Due Process Clause." *Fed Home Loan Mtg Ass'n v Kelley*, 306 Mich App 487, 497; 858 NW2d 69 (2014). Additionally, we conclude that the notice provided by Consumers and DTE to their customers regarding smart meter installation was more than adequate. Consumers and DTE provided 30 days' written notification before installation and a written reminder two weeks before installation with telephonic follow up. Additional information was also available online and by telephone. Therefore, Residential's due process argument is without merit. See *In re ITC Application*, 304 Mich App 561, 568; 847 NW2d 684 (2014) ("To satisfy the demands of due process, if notice is due, the means employed must be such as one desirous of actually informing the [party in interest] might reasonably adopt to accomplish it[.]") (citations and quotation marks omitted.)

Additionally, Residential raises health concerns pertaining to the use of smart meters. The MPSC acknowledged this issue in Case No. U-17000, finding that reports compiled examining available literature and scientific information on this topic determined that such concerns were

---

[1] Residential also points out that MCL 750.539d(1)(a) states that "a person shall not . . . [i]nstall, place, or use in any private place, without the consent of the person or persons entitled to privacy in that place, any device for observing, recording, transmitting, photographing, or eavesdropping upon the sounds or events in that place." However, because Residential did not identify this issue in the statement of questions presented as required by MCR 7.212(C)(5) and because it does not appear that the issue was raised before the MPSC, we decline to consider it. See *Stenman*, 311 Mich App at 388.

insignificant. The same concerns were voiced in MPSC Case No. U-17053 involving DTE.[2] As recognized previously by this Court:

> Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. In contrast to res judicata, collateral estoppel conclusively bars only issues actually litigated in the first action.

> However, ratemaking is a legislative, rather than a judicial, function, and thus the doctrines of res judicata or collateral estoppel cannot apply in the pure sense. Even so, issues fully decided in earlier [M]PSC proceedings need not be completely relitigated in later proceedings unless the party wishing to do so establishes by new evidence or a showing of changed circumstances that the earlier result is unreasonable. [*In re Consumers Energy Application for Rate Increase*, 291 Mich App 106, 122; 804 NW2d 574 (2010) (citations, quotation marks and brackets omitted).]

Although Residential once again raises the specter of safety concerns associated with smart meters, it fails to come forward with anything other than its unsubstantiated and inchoate fears, which are insufficient to necessitate the reconsideration of this issue.

As recognized in *Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc*, 305 Mich App 460, 474; 853 NW2d 467 (2014): "It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding[.]" Despite this prohibition, Residential continues to raise issues already definitively determined by both the MPSC and this Court with reference to the use and installation of smart meters and their technology and the authority or jurisdiction of the MPSC for its various rulings. Indisputably, if Residential were to come forward with "new evidence or a showing of changed circumstances that the earlier result is unreasonable," it would have every right to challenge Consumers, DTE, or the MPSC. See *In re Consumers Energy Application For Rate Increase*, 291 Mich App at 122 (citations, quotation marks and brackets omitted). However, mere dissatisfaction with the outcome of innumerable past proceedings is not sufficient to justify the different outcome sought by Residential, particularly in light of the clear indication that smart meter technology now comprises the accepted industry standard adopted by Consumers, DTE, and other utilities consistent with their authority and management prerogative. *In re Consumers Energy*, 322 Mich App at 490 ("[T]he decision regarding the type of equipment to deploy as an

---

[2] While acknowledging the absence of precedential value, *Zaremba Equip, Inc v Harco Nat'l Ins, Co*, 280 Mich App 16, 42 n 10; 761 NW2d 151 (2008), citing MCR 7.215(C)(1), we find persuasive the decision in an unpublished per curiam opinion following the MPSC ruling in U-17053, wherein this Court found the MPSC's ruling to not be "unlawful or unreasonable" based on the failure of the individuals raising safety claims to come forward with "new evidence or any changed circumstances [to] render [the MPSC's] decision unreasonable." *In re Application of Detroit Edison Co to Implement Opt Out Program*, unpublished per curiam opinion of the Court of Appeals, issued February 19, 2015 (Docket Nos. 316728, 316781), p 8.

upgrade to infrastructure can only be described as a management prerogative.").  Consequently, Residential is not entitled to relief.

Affirmed.


/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Anica Letica